Good morning, Your Honors. May it please the Court, Josh Rosenkranz, representing the Guardant. Your Honors, everyone agrees on a fact that requires remand under this Court's precedent. That undisputed fact is that the prior Orritt had already combined the two key elements that issue here, at least in the volume. Can you show me, in your petition, where you argued a single reference obviousness case based upon the Traverse 75 publication? Sure, Your Honor. That's what you're arguing to us now, that Traverse 75, including that paragraph, is it 122, has all the elements, right? Yes. Where in the petition do you clearly make that single reference obviousness case? Well, in the petition, Your Honor, we say, we refer to the pair as the Traverse publications. I know you're asking me specifically. Yeah. We said that both of them, quote, this is at 179, provide descriptions of the same hack biomethodology. I will underscore that the Board understood that that was our argument about paragraph 122, because the Board of Institutions... Wait, hold on. Counsel, where is your saying both of them? What I'm reading on page 179, Oposa would have been motivated to look to both Traverse 079 and the Traverse pages, because together, the references provide descriptions of the same pack biomethodology. So together, taken together, they provide it, not each independently provides it. Yes, Your Honor, but our point in the petition was the two were describing the same methodology, or they're both describing the same mind. We said in our reply, which quote... But you have to make the argument. This is, I mean, there's no doubt in my mind that Traverse 75 discloses this, but I could I searched in the petition for any place where you said Traverse 75 renders these claims obvious. Your Honor, the important thing here is that the Board... No, the important thing is that our precedent requires you to actually disclose that ground to the Board, and all the charts, all the discussion, all of it talks about a combination of the two Traverse references. Your Honor, I disagree. Let me start by saying... I'll invite you to point to me in your petition, once again, your best place where it says these patents are rendered obvious by Traverse 75. We don't say those words, Your Honor. What we do is... But you have to say those words. We don't have to say those words. Why are you taking that position? Why can't you just say that Traverse 75, I mean, I don't understand. Traverse 75 discloses elements B and C, that that alone is what you're relying for elements B and C? I mean, right? I mean, I don't understand why you would even have this conversation. Could you explain looking in the paragraph on pages A178, 179, what your position is? Is it your view that it's Traverse combined with the Traverse paper, otherwise known as 2010, and how they are combined? Yes, Your Honor. So what we did on those pages was to map each element onto Traverse 075 paragraph 122. And then we would do a C also to Traverse 2010. And the point I was trying to make earlier is that the board understood that that's what we were doing in our petition. In its institution decision, the board correctly described the petition exactly as you just did. Give us the cite for that. At 352, exactly as you just did, Judge Stoll. Traverse, oh, the mic went off. Okay. Traverse 075 paragraph 122 explicitly taught steps B, that's amplifying, and C, that's sequencing without requiring modification. That's the board reading our petition. The board understood that those two elements were both in Traverse 122. And how did they get so far from this in the final decision? If they understood in the institution decision that you were making this argument, how do you think they ended up so askew in the final decision? Your Honor, what they said was that further evidence revealed the facts more. There was no further evidence about what paragraph 122 taught. The further evidence was the board concluding that it's not going to abide by real time and by GE because it thought that the combination wouldn't work. Can I ask you a question? Do you think that they took a different interpretation of the petition? I mean, we do review that for an abuse of discretion, right? You are. Backing that up. We've got, just for everyone in the room, the Supreme Court has told us that the petition sets the stage for what is at issue before the board. So we're really looking at the petition to see what the proposed combination was to understand, to see if the board set up, if you will, a red herring argument to see if there was a particular combination that was being proposed that then would not work. Or there would have been a motivation to combine those as they... Do you think that they read the petition differently? I mean, they're allowed to do that, right? They certainly are allowed to do it. They never said they read it differently. They repeated on pages 15 to 16 exactly what they found in the institution decision as to how they read. I will underscore again in our rebuttal, our expert made clear again that we were not splitting the elements between Travers 075 and 2010. That's at 3164 to 65. He mapped both elements onto Travers. We mapped all of the elements individually onto Travers at 183 to 84 and at page 503. So let me ask you hypothetically, if you had argued that Travers 2010 supplies all of the paragraph 122 for that final step, would we be in a different stage here? Because then the board could say, well, they have to show a motivation to combine these two publications because it's not taught by all of one publication. Let me finish. And here's why we don't think you would use paragraph 122 from Travers 075 in Travers 2010 because it wouldn't work, no expectation of success, all of that kind of stuff. If that were their conclusion, and you did need to combine both of them, then would it be different? It might be different, Your Honor. You answered this question in GE. There were multiple elements in one reference. There was one element in the other, and the question was whether a person of skill in motivation to combine the four that were already combined. So my answer to you is- Well, no, no, no. But that's not what I just asked you because I agree that you don't have to show a motivation to combine in the same reference. It's already there. But if in the classical situation, you have to get to a second reference to disclose a critical element, then the motivation to combine analysis comes into play, right? It does, Your Honor. If that's- Sorry, I'll let you finish. But if that's the way the board saw this and thought that you were arguing 2010 in combination with 75 to get to that last element, that would be a typical obvious analysis. And if they said no motivation to combine, then we're going to be reviewing that for substantial evidence, right? So, Your Honor, it depends- Hypothetically. So my answer is yes with one caveat. It depends on which elements were not combined. That the outlier element- Well, yes. Let's just assume for purposes of that hypothetical that the element required by paragraph 122 is only shown in that paragraph. And so you had to get to 75 for that. And that the other elements that you relied on were all in 2010. You would need to show a motivation to combine that one with the other, say, four. And I have to tell you, I understand your arguments on why 75 shows all of this. But the board clearly, at least by the time of its decision, thought you were relying on 2010. I mean, maybe it was disingenuous of the board to write the decision that way. But it sure looks like they understood, whenever they did an institution, by the time they got to the decision, they understood you to be relying on 2010's disclosure of the PAC bill system. And that the only thing you needed from 75 was paragraph 122. So, Your Honor, if that's what the board said, I would agree that they can reinterpret our petition. That is not what the board said. The board, at 15 to 16, repeated what it said at institution, did not say that 122- It did not say that it was reading our petition differently, nor did it say that paragraph 122 does not actually- Mr. Rosenkranz, I'm sorry, but I can't imagine your time is up. Chris, did you not restart the clock? No, he has five more minutes. Then why does it say zero on my clock up here? I'm sorry, it was set at 10 minutes. We were going to do 10 minutes to find the rebuttal, but the clock was set at 10, so we have five minutes left. So, I'm in my rebuttal time. Was there a question that I haven't answered? Let me just say one last word on the backup argument, which is, if the court agrees that we don't need to show motivation, of course, the court does not have to go to the technical problems, but I'll just say one word about the keystone technical problem here. The single finding of technical problems on which the entire decision of lack of motivation to combine rests is that smart sequencing of an RCR amplified concatenator would not work because multiple DNA polymerases attached to the concatenator- And we review that for substantial evidence, right? We do, Your Honor. There is literally no evidence that there is a problem with multiple polymerases on the molecule. The problem arises only if they bind to the bottom, but the board did not find that they are more likely to bind to the bottom. If I may, if I may reserve the rest of my time for rebuttal. Okay, Mr. Milliken? Good morning, Your Honors, and may it please the court. To the extent this case raises a legal issue, it's whether the court should adopt Garden's sweeping rule that two elements appearing together in the prior art is, by itself, dispositive on both motivation to combine and reasonable expectation of success. I don't understand that start at all. If it's all in a single reference, we don't have to consider motivation to combine, do we? Can I put a correction on that before you go too far? If it's all in a single embodiment and a single reference. Encyclopedia Britannica has one reference. Well, we can't dispute that, but yes. I disagree, Your Honor. I think the impacts case is directly on point. That case disclosed an embodiment where zolmatriptan was in a nasal formulation, and the district court nevertheless found that a skilled artisan would not have been motivated to put zolmatriptan in a nasal formulation. The reason is, as this court said in Ardicat, evidence suggesting reasons to combine cannot be viewed in a vacuum. Can I ask you a question? In this case, you've got a sentence. We're thinking about paragraph 122 in the 075. It says that, hey, you could use this template in order to do RCR, which I understand to be amplification. And then it says after that, you can use the sequencing techniques taught elsewhere in this patent after you do the amplification. Why, under those facts in this case, do you think that it necessarily means that there has to be a motivation to combine those two steps? Because the motivation to combine inquiries, as the court said in Impacts and Ardicat, has to be done based on the prior art as a whole. And the board here found that while we do have paragraph 122, which suggests doing RCR amplification and then sequencing the product, we also have Travers 075 itself recommending against concatenation of its DNA. We have a multitude of prior art references saying that smart sequencing doesn't use an amplification step. Well, that's what it says, right? I understand what you're saying. It says if you're doing smart sequencing alone, you're not going to amplify. But then there's this one-off embodiment that says, hey, you know, you could use this template in order to amplify and then sequence using smart sequencing. Correct. And my point is that the board properly weighed that one-off embodiment against all of the other evidence, including our experts over 100 paragraph explanation of why this wouldn't work. The board properly weighed the evidence and found that, in fact, you wouldn't be motivated to do this and wouldn't expect to do that. So your view is that in patent law, if there's two references or even one reference, and it teaches the elements of the claim in sequential order as required by the claim, it is OK to turn to obviousness anyway if there's other evidence that teaches away from those two steps being performed, one after the other. Well, if they had argued anticipation, then we wouldn't be having this conversation. Then motivation and combined expectation of success wouldn't be relevant. But could you answer my question? If you... Oh, I apologize. I thought that was... If you were arguing obviousness and the patentee puts forward evidence that notwithstanding the fact that the elements are disclosed together in the art, a skilled artisan, in fact, wouldn't want to do it, then yes, I think the trier fact has to weigh that evidence. And I think that's what the impacts case says. Even where it's not the theory that's put forth by the challenger in the petition. Could you clarify? So you're saying that there has to be a showing that one of ordinary skilled in the art would have modified Travers 075 paragraph 122 to know that you would have RCR replication followed by smart sequencing. So I wouldn't put it quite that way. I would say that... So Garten pointed to paragraph 122 of 075 and says, Hey, you could sequence the RCR product using smart sequencing. We came back and said, No, actually, you wouldn't want to do that because of all these technical problems that would introduce. I am saying that the trier fact has to weigh that evidence to decide which side has the better side of the argument. Even if you disagree with me on motivation to combine, though, even if you think the two elements appearing together in the prior art is by itself dispositive on motivation to combine, that doesn't help Garten on reasonable expectation of success. Can I ask you something else? I want to ask you because could you have argued enablement in this case? Could you have argued that Travers 075 is not a proper prior art reference because it doesn't enable the use of RCR replication followed by smart sequencing? I mean, it seems to me kind of that's what your argument is. We did argue that, Your Honor, and we've also urged it in this court as an alternate ground of affirmance because the board found as a factual matter that it would not be possible to sequence these RCR concatenate products using smart sequencing. The board used a lot of very descriptive adjectives, incompatible, unworkable, appendix 22, unsuitable, unsequenceable, appendix 30. So you're saying you argued enablement? In the alternative to our no motivation to combine. And where is that in your brief on appeals? It is at the very end of the brief, Your Honor. Actually, I have the page here. It begins on page 67 of our red brief. Now, I don't think you have to get to enablement because the reasonable expectation of success inquiry. Garden doesn't have a single case saying the two elements appearing together. Respectfully, I don't see the word enablement here on these pages that you've given to me. So on page 67 of the red brief, Your Honor, we have a heading B that says the board's fact findings are also sufficient for this court to affirm the board's decision on enablement grounds. How could we reach that? I mean, that sounds like the Chenery problem. No, Your Honor, because what Chenery precludes is this court deciding factual issues that are for the board to decide in the first instance. Here, the underlying finding of fact has already been made, which is that this would not be possible. I thought Chenery was a little broader than that and allows us not to affirm on a different ground that the agency relied on. Respectfully, Your Honor, I disagree. This court has cases such as Aoyama, which is 556 F3R 1293, saying that if the board has already found the relevant facts, then this court can affirm on a legal ground that was not relied on by the agency. What was that case about? I don't recall the specific posture, but the legal point from it, I've stated accurately. The... What I want to go back to, though, is you don't even have to get to enablement because we have the reasonable expectation of success problem here. Should we get a reasonable expectation of success if one reference teaches performing one element followed by another element? Yes, you should require a reasonable expectation of success, and that's what this court's cases say, including General Electric, which is Garden's favorite case. General Electric said that on those facts, it was enough that Wendis disclosed all the engine parameters. That was enough for motivation to combine, but the court said you would still have to show that the skilled artisan would have expected success in combining those things, and that makes sense because the prior art analysis, to avoid hindsight, needs to be done based on the prior art as a whole. You do not zoom in on snippets of prior art references. So based on what you just said, do you agree that motivation to combine is no longer on the table? Because you cited the case that says it would suffice for motivation to combine if the prior art reference discloses the two elements together, and it did here. Paragraph 122 says amplification followed by sequencing in a single paragraph. I do not agree that motivation to combine is no longer in the table, and here's why. I read General Electric as a very fact-specific case. There, the patent challenger said all these engine parameters are disclosed in Wendis. The patentee didn't put any evidence on the other side of the ledger on those facts. This court found that was sufficient for motivation to combine, and the court was clear it was deciding the case on a substantial evidence standard of review, which reinforces the point that it was factual. I'm sorry, but when you have a single embodiment that discloses the steps in order, at least these two, if not all four, these two, why do you need more to provide a motivation for one to combine? Why isn't that sufficient on its face? I understand that's a different question, to be clear in my mind, from reasonable expectation of success, but I'm really struggling with how that does not suffice for the motivation to combine. So the short answer is that's what impacts says. The longer answer is impacts is an application of the principle that, as this court said in Ardicat, evidence suggesting reasons to combine can't be deemed in a vacuum apart from evidence suggesting reasons not to combine. The fact that two elements appear together in a single embodiment and a prior reference... Well, no, no, no, no, no. That's in cases where there are reasons to make a combination. This does make the combination. That's different. That's when nothing expressly tells you to make the combination. You're saying, oh, well, it might be good to combine these things because it would be more efficient. Oh, but it might be bad because it'd be really expensive to do it. You know, like that's when you're evaluating characteristics, but when no one has expressly told you in a single embodiment, in a single reference, do one, then two. I would submit, Your Honor, that... None of the cases you've cited are that, are they? One, two. Impacts is. Absolutely, Your Honor. In impacts, this court said that the district court had correctly, quote, acknowledged that Zolmetryptan was mentioned in connection with nasal formulations, end quote, and then properly found the claims not obvious anyway. We are on all fours with impacts here. We do have an embodiment where the relevant claim elements are joined, but we also have a lot of evidence on the other side, like the evidence that it would have been counterintuitive to make a nasal spray with Zolmetryptan. We have a lot of students in the room, right? So I was wondering if you could tell them, as a policy matter in patent law, why does there have to be a motivation to come by? Sure, two reasons, Your Honor. The first is to prevent hindsight, and specifically, we want to look at the prior art as a whole because we want to avoid invalidating patents based on what might seem in hindsight to be more obvious. What is the second thing? The second is we want to give patents to people who actually do the difficult work of invention. Gartner loves to quote General Electric and say that it wasn't required to redo the work that Travers already did. Travers 122... I have a follow-up question, if that's okay. My follow-up question is on, to be honest with you, I wasn't sure about the second policy reason you gave, but I was thinking of the first one. So because the goal behind motivation to come by is to avoid hindsight, when there's a single reference embodiment that teaches one element followed by another element, how can you argue that there's any hindsight problem? It's saying, hey, do this followed by that, and it's exactly what's recited in the claim. You might have a different argument, like it doesn't give enough detail about how to do that, and that's a different issue. I understand your question, Your Honor. The answer is because Gartner wants to zoom in on 122 and ignore everything else in the prior art. If you were to only look at paragraph 122 and ask, would this have been obvious? Maybe the answer is yes, but the point is that's not what we look for. But the point is, is this what the reference teaches? I mean, we do a gram analysis, and the first thing you do is you look at the scope and content of the prior art. And here, in looking at the scope and content of the prior art, the point is that the 075 teaches all the elements of the claim, including parts B and C, but is further supported by the teachings of the reference, but not that it doesn't teach, you know, the amplification of the sequence. Traverse 075 teaches what it teaches. We're not disputing that. But the question of obviousness goes further. Can you clarify that? When you say that, do you mean Traverse 75 teaches all the necessary elements of the claim patent? Not of the claim as a whole, but I agree with my friend that paragraph 122 discloses amplification followed by sequence. What does 75 not teach? There is an element regarding sequence reads and the patent that we disputed that the Traverse publications teach. The board didn't expressly reach that. There are also several elements in other claims beyond claim one that we argued were missing, and the board didn't reach those arguments either. One point I want to make in the minute that I have left, this colloquy that we've been having for the last 14 minutes about whether you need motivation combined and reasonable expectation of success, when you've got both elements in one prior art environment, it's nowhere in the papers below. Why it's nowhere in the papers below? Because they didn't make this argument below. They advanced a multi-reference combination. They did not advance a single reference obviousness theory. Well, but that's because in the institution decision, the board expressly said paragraph 122 discloses amplification followed by sequencing that you don't need a motivation combined there. So why would they have made that argument post-institution decision? Because we came back in our patent owner response at appendix 432 to 435 and said, Gordon is incorrect about this. They still have to show motivation and combined and reasonable expectation of success. Gordon did not dispute that. Appendix 515 to 523 is the relevant passage of their reply. They never said they didn't have to prove motivation or reasonable expectation of success. They argued that they had met their burden on that. And then at the oral hearing, their counsel confirmed when asked a question about this very issue that they were attempting to meet the burden. He did not say- Okay, I know we're out of time, but I'm going to give me an extra minute here. But walk me through 431 where you said, you said 431 to 435. Walk me through where you make the argument that despite the fact that paragraph 122 of Travers 075 discloses both amplification and sequencing, nonetheless, that does not suffice. Just walk me through it. So at the bottom of Appendix 432, with the last paragraph on that page, we say, Petitioner may argue that its RCR embodiment need not be combined with PacBio's smart sequencing workflow because Travers 075 discloses a hypothetical RCR embodiment. This argument fails both scientifically and legally. And then we make the point that they're relying, their theory relied on a combination, not a single reference. And then we note that a skilled artisan would have known that PacBio actually didn't use amplification.  This is at the bottom of Appendix 433. A skilled artisan would have known that introducing an unnecessary amplification step into the amplification-free smart sequencing workflow would introduce more errors. And then this is perhaps the best site on Appendix 435. We distinguish their reliance on the Merck case. And we said that in Merck, it wasn't just that the unpreferred embodiments could be tried. The prior art also showed that they would work. And that's what's lacking here. They did not meet their burden to show a reasonable expectation of success. And we also made the point back on Appendix 434 that Merck was a single reference obviousness case, not a combination case. And so if Garton thought that it needed to press for the legal rule that it's arguing for an appeal, it was incumbent on it to do that below. And so I submit the argument was forfeited. Thank you, Mr. Milliken. Mr. Rosenkranz, you've got maybe five minutes for rebuttal, please. Thank you, Your Honor. Your Honor, there's two points. First, I'll just go back to Judge Hughes' very first question. You are right. Our petition does not say the magic words. We hereby declare that we have one prior art reference with an embodiment with all five elements. Let me be clear. I'm not requiring magic words. You know, it doesn't have to specifically have a heading that says it. But I struggle to find anywhere where it was clear to me from your petition that you were arguing 75 alone disclosed all the steps. Almost throughout this petition, it talks about the Travers papers in combination. Look, you have the better argument on what that reference discloses, but I'm not sure you made it properly before the board, and I'm not sure what to do about that. So I understand the point, Your Honor. And my point was not just that we don't have to say those specific words, but we did the equivalent when we mapped every single element of the claims onto Travers 075 paragraph 122. And in particular, on page 183 and 184, it shows that we said these two elements represent both amplification and sequencing. For each one of those, we cite first and foremost paragraph 122. And then we cede also to Travers 2010. We told the board these two references should be read together. And we told the board that they, quote, describe, quote, an embodiment. Why? The two of them together. Why did we cite two? One is a patent. And the other is a long research article that explains more about the patent. I'm going to lecture your client for five seconds. You bring in really good appellate lawyers to try to save a poorly done petition. But go ahead. Continue. Well, and that's a message not to you. Thank you, Your Honor. But that's a compliment to you. I appreciate it. But I will also underscore that. I mean, I understand what you're saying. But what you just showed me actually does what I'm concerned about. It doesn't specify only 75. It does them together. And I understand your point is, well, 75 does everything. And we're just adding this other one to explain more details or whatever. But how am I as the board? Well, I won't get into it. I know you think the board understand you and then change course. But the board read this as, at least in its final written decision, as requiring both of these. So Your Honor, the point I was just about to make is the one that you made for me. The board said how it read our petition. The board never changed its mind as to what a petition does. The board changed its mind as the legal consequence because the board concluded that when you put those two things together, it doesn't really work. Yeah, but do you need me to conclude, for you to prevail, do you need me to conclude that because 075 discloses a hypothetical where amplification could occur and then you could do sequencing or you could do implication before sequencing, because it says that, is that like game over? This is not anticipation. It's obviousness. What if they then put in a mountain of evidence that said a skilled artisan would never do that? A skilled artisan wouldn't do it. And here's all the reasons why. Are you saying the board is precluded in that set of circumstances from saying there's no motivation to do this? I am. And that's with General Electric help. But I want to underscore, that's what enablement is for, as Judge Stoll pointed out. But the same thing is reasonable expectation of success is part of this as well. And that's kind of like a proxy for enablement. Right. Unification technology says that the same rule applies to expectation of success as to motivation of combined. Because when it is cited by the examiner, it is presumed enabled. But that doesn't make sense. Hear me out. There are a lot of references out there that are wish lists, functional descriptions of things, without the meat to actually execute them. Think of how many patents are out there that make grandiose claims of what they cover without explaining to anyone how to do those things. So a grandiose claim of do step one, then step two, if nobody knew how to do step one, then step two, isn't really disclosing the step one, step two thing. So why isn't it fair for the board to say, I know this suggests step one and two. And maybe that would suffice for motivation combined. But it doesn't suffice for reasonable expectation of success because this disclosure is so nascent. It is so superficial as to not allow a skilled artisan to understand how they could make that combination. What's wrong with the board making that fact finding? I don't see that that's precluded by law. Yeah, what is wrong with it as a matter of law? Yeah, I don't see that that's precluded by law. So my time is out. Stop, don't. I also have one last thing to say afterwards. Maybe. Go ahead. So as a matter of policy, what this court's precedent explains is that when a person of skill in the art has already described things together, that person of skill in the art has provided both the motivation and a reasonable expectation. They believe it's accessible. What case says that? I don't see a case that says that. Unification technologies says that, Your Honor. And I want to underscore, impacts is different. This is not a wish list. This is an embodiment that had everything together. And if there's a problem with that, the patentee can go to enablement law. But they can also go to reasonable expectation of success. Only if they are not. Only if reasonable expectation of success is required when you have both elements. I'll also say there's no stopping point then. If a patentee can come in and say, oh, no one would have expected this to work, it will happen in every single IPR and every single obviousness case. We will have no benefit from the rule. Well, there's not going to be any more IPRs in. OK. It'll happen in every obviousness case. We will no longer have the rule of real-time data or general electric. If I can make just one last point, it'll take me 30 seconds. The board repeated that it understood our argument during oral argument, the very page that Mr. Milliken refers to at 70809. It attributed to us the argument, quote, you don't need a reason to combine because it's all in there. The board understood what we were saying. We did not have to repeat the legal point that the board already articulated as the ground rules for this case in order to preserve the legal issue. And there's no reason you would ever go forward to try to prove motivation to combine or reasonable expectation of success once the board had already said, you don't need to prove them. Well, you would if then the response by the patent owner says, I know you said this in the institution decision, which is a lot like a PI, it's only an initial statement, but here are all the problems we have. Sure. So the board would need to, and you would need to, if the patent owner says so. Correct. If you can find that in the patent owner's response, a statement that the law is not what Gordon says it is and that the board got the law wrong, yes, we would have to engage. These petitions are really limited, and there are dozens of claims, and later down the line for dependent claims, dozens of- The good news is you can bring them over and over again. All right, thank you. Thank you. Thank you, Mr. Rosenberg. Thank you. Thank both counsel. This case is taken under submission.